CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
T: (702) 434-8282
F: (702) 434-1488
Christian@cmtalaw.com
Sarah@cmtalaw.com
Lindsay@cmtalaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| D.G., an individual,<br><br>Plaintiff,<br><br>vs.<br><br>VICI PROPERTIES L.P., a Foreign Limited Partnership; VICI PROPERTIES 2 L.P. a Foreign Limited Partnership; MGM RESORTS INTERNATIONAL, a Foreign Corporation; DOES 1 through 10; ROE CORPORATIONS 13 through 20; and ABC LIMITED LIABILITY COMPANIES 21 through 30,<br><br>Defendants. | CASE NO.:<br><br><br>**COMPLAINT** |

COMES NOW, Plaintiff, D.G. by and through her counsel of record, Christian M. Morris, Esq., Sarah E. DiSalvo, Esq., and Lindsay N. Roginski, Esq., of the law firm CHRISTIAN MORRIS TRIAL ATTORNEYS, for her causes of action against Defendants above named, and each of them, and complain and allege as follows:

*(sidebar)* CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

## INTRODUCTION

Defendants VICI PROPERTIES L.P., a Foreign Limited Partnership; VICI PROPERTIES 2 L.P., a Foreign Limited Partnership; and MGM RESORTS INTERATIONAL, a Foreign Corporation (hereinafter "Defendants"), exploited victims of sex trafficking, deliberately ignoring blatant signs of abuse to maximize their profits. Defendants prioritized financial gains over the lives and dignity of countless victims, creating an environment where traffickers could operate with impunity. Defendants' willful negligence and active complicity demonstrate a shocking disregard for human life, as they knowingly facilitated the systematic abuse and exploitation of vulnerable individuals for years. Plaintiff D.G., is one of many vulnerable individuals who were coerced into sex trafficking, forced into commercial acts, and subjected to abuse, all while Defendants turned a blind eye to their suffering. Defendants and their staff consistently ignored clear indicators and reports of sex trafficking at the Excalibur, allowing their property to become a hub for sex trafficking, profiting from the repeated bookings and extending stays while countless lives were shattered within its walls.

## PARTIES

1.      Plaintiff D.G. is and at all times relevant hereto was a resident of Humble, Texas.

2.      Plaintiff D.G., (hereinafter "Plaintiff"), is a victim of trafficking pursuant to 22. U.S.C. § 7102(12), 22. U.S.C. § 7102(16),  22. U.S.C. § 7102(17), 18 U.S.C. § 1591(a), and 18 U.S.C. § 1595.

3.      Upon information and belief, VICI PROPERTIES L.P., is, and at all relevant times, was, a Foreign Limited Partnership doing business in Clark County, Nevada.

4.      Upon information and belief, VICI PROPERTIES 2 L.P., is, and at all relevant times was, a Foreign Limited Partnership doing business in Clark County, Nevada.

5.      Upon information and belief, MGM RESORTS INTERNATIONAL, is, and at all relevant times was, a Foreign Corporation, doing business in Clark County, Nevada.

6.      Upon information and belief, at all times relevant hereto, Defendants VICI PROPERTIES L.P., and VICI PROPERTIES 2 L.P., (hereinafter collectively referred to as "VICI") owned, operated, controlled, and/or were otherwise in charge of the premises located at

3850 South Las Vegas Boulevard, Las Vegas, Nevada 89101, commonly known as the Excalibur Hotel and Casino.

7.    Upon information and belief MGM RESORTS INTERNATIONAL (hereinafter "MGM") operated, controlled, and/or was otherwise in charge of the premises located at 3850 South Las Vegas Boulevard, Las Vegas, Nevada 89101, commonly known as Excalibur Hotel and Casino.

8.    Upon information and belief, Defendants VICI, as the owners and landlords of the Excalibur Hotel and Casino ("Excalibur"), leased the premises to Defendant MGM for the operation of a hotel and casino. Notwithstanding the lease, Defendants VICI actively participated in, and knowingly benefited, financially and otherwise, from the ongoing commercial operation of Excalibur through their lease agreement, including, but not limited to, rental income, profit sharing, revenue-sharing arrangements, and retained rights of operational oversight and control over the property.

9.    Upon information and belief, Defendants VICI exercised and retained rights of oversight, inspection, monitoring, and approval regarding the condition, use, and operation of the property. This included rights to enforce operational standards, maintenance, and lawful use of the premises. Through these rights and ongoing involvement, Defendants VICI maintained substantial ability to influence and control key aspects of Defendant MGM's operation of Excalibur, including but not limited to safety, security, and guest protection protocols.

10.    Upon information and belief, Defendants VICI knew or should have known that commercial sex trafficking was occurring on their property, given the pervasive and well-documented prevalence of sex trafficking within Las Vegas casino hotels, the open and notorious visibility of such activity at Excalibur, and the unique ability of property owners to observe, monitor, and control activities occurring at their premises.

11.    Defendants VICI knowingly benefited, financially and otherwise, from participation in the venture that included Defendant MGM's operation of Excalibur, by receiving lease payments, revenue share, and derived economic value from property operations, including proceeds generated through continued room rentals and facility usage by traffickers and their

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

associates.

12. Upon information and belief, Defendants VICI, by retaining and exercising rights of oversight, monitoring, approval, and inspection, possessed the legal authority to control and direct Defendant MGM's use and operation of the Excalibur. This authority included the power to require compliance with all applicable laws and to mandate the adoption and enforcement of anti-trafficking policies and protocols. Despite possessing both the power and responsibility to implement, require, or enforce meaningful anti-trafficking measures, Defendants VICI failed to act, willfully disregarded the ongoing trafficking activity at Excalibur, and instead continued their business arrangement with Defendant MGM, thereby allowing trafficking to persist while reaping substantial financial benefit from the venture.

13. Upon information and belief, Defendant MGM, as the operator and manager of the Excalibur Hotel and Casino, exercised direct control over the day-to-day operations of the property, including all aspects of hotel management, guest services, room rentals, and casino activities. Defendant MGM was responsible for implementing and enforcing policies related to safety, security, and compliance with applicable laws throughout the Excalibur.

14. Defendant MGM maintained centralized systems for reservations, guest data, internet and Wi-Fi networks, and payment processing, which enabled close monitoring of guest behaviors and patterns commonly associated with sex trafficking. Through these resources, Defendant MGM possessed the ability to identify, track, and respond to trafficking indicators, yet failed to implement reasonable preventative measures.

15. Upon information and belief, Defendant MGM knew or should have known that sex trafficking was occurring on the premises, given the pervasive nature of such criminal activity in Las Vegas hotels, observable guest conduct, frequent complaints, and repeated red flags displayed by traffickers and their clientele at Excalibur.

16. Defendant MGM knowingly benefited, financially and otherwise, from participation in the venture operating at Excalibur by deriving revenue, profits, and economic value from ongoing room rentals, casino services, and amenities purchased by traffickers, sex buyers, and their associates.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

4

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434-1488

17.    Despite possessing the authority and responsibility to prevent trafficking through effective policies, staff training, guest monitoring, and immediate intervention, Defendant MGM failed to take reasonable action to deter or disrupt trafficking activity. Instead, Defendant MGM chose to allow trafficking to persist and directly benefiting from it.

18.    Upon information and belief, Defendants, and each of them, are vicariously liable for the acts and omissions of their agents, employees, contractors, and affiliated entities operating at Excalibur. Defendants VICI, as owners and lessors, leased the property to Defendant MGM for hotel and casino operations, while retaining rights of oversight, monitoring, and approval as landlords. Defendant MGM, as lessee and operator, maintained direct control over day-to-day operations, staffing, security, and guest services. By virtue of these roles, Defendants, and each of them, exercised substantial authority over the oversight, security, and operational standards of the Excalibur. Accordingly, Defendants, and each of them, are responsible for the acts and omissions at the Excalibur.

19.    Plaintiff is informed, believes, and thereon alleges that all of the acts, omissions, and conduct described below of each, and every Defendant were duly authorized, ordered, and directed by the respective and collective Defendant corporate employers, officers, and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents and representatives and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents and representatives, the Defendant corporations, respectively and collectively, ratified, accepted the benefits of, condoned, lauded, acquiesced, approved, and consented to each and every of the said acts and conduct of the aforesaid corporate employees, agents and representatives.

20.    Plaintiff is informed, believes, and thereon alleges that all of the acts, omissions, and conduct described below of every and all Defendants were duly authorized, ordered, and directed by the respective and collective corporate employers, officers, and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents, and representatives, and

1 | each of them; and upon completion of the aforesaid acts and conduct of said corporate employees,

2 | agents, and representatives, the Defendant corporations, respectively and collectively, ratified,

3 | accepted the benefits of, condoned, lauded, acquiesced, approved, and consented to each and

4 | every one of the said acts and conduct of the aforesaid corporate employees, agents, and

5 | representatives.

6 | 21. The true names and capacities, whether individual, corporate, associate,

7 | governmental or otherwise, of Defendants designated herein as DOES 1 through 10; ROE

8 | CORPORATIONS 11 through 20, and ABC LIMITED LIABILITY COMPANIES 21 through

9 | 30, ("DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants"),

10 | inclusive, are unknown to Plaintiff at this time, who therefore sue said Defendants by such

11 | fictitious names. When the true names and capacities of said Defendants have been ascertained,

12 | Plaintiff will amend this Complaint accordingly, and reserve the right to do so at the appropriate

13 | time.

14 | 22. Plaintiff is informed, believes, and thereon alleges that DOES/ROE

15 | CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants are responsible,

16 | negligently or in some other actionable manner, for the events and happenings hereinafter referred

17 | to, and caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged.

18 | 23. Plaintiff is informed, believes, and thereon alleges that DOES/ROE

19 | CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants were involved in the

20 | initiation, approval, support or execution of the wrongful acts upon which this litigation is

21 | premised, or of similar actions against Plaintiff of which Plaintiff is presently unaware or without

22 | adequate knowledge.

23 | 24. Plaintiff is informed, believes, and thereon alleges that DOES/ROE/ABC

24 | Defendants are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a

25 | joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein;

26 | and/or are entities employed by and/or otherwise directing the individual Defendants in the scope

27 | and course of their responsibilities at the time of the events and circumstances alleged herein;

28 | and/or are entities otherwise contributing in any way to the acts complained of and the damages

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

6

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

alleged to have been suffered by Plaintiff herein. Upon information and belief, each of the Defendants designated as DOES/ROE/ABC is in some manner vicariously and/or statutorily responsible for the events alleged by this Complaint and actually, proximately, and/or legally caused damages to Plaintiff.

25.    Defendants, and each of them, were the apparent and ostensible principals, apparent and ostensible agents, agents, apparent and ostensible servants, servants, apparent and ostensible employees, employees, apparent and ostensible assistants, assistants, apparent and ostensible consultants, and consultants of their Co-Defendants, and were acting as such within the course, scope, and authority of said agency and employment, and that each of the Defendants, as aforesaid, when acting as a principal, was in some manner responsible for the events alleged herein as an agent, servant, employee, assistant, and consultant.

26.    Every act or omission of the Defendants and their apparent and ostensible principals, principals, apparent and ostensible agents, agents, apparent and ostensible servants, servants, apparent and ostensible employees, apparent and ostensible assistants, assistants, apparent and ostensible consultants, and consultants of their Co-Defendants, whether or not within the scope of their agency, was ratified by the other remaining Defendants.

## JURISDICTION AND VENUE

27.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

28.    This Federal District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, specifically the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595.

29.    This Federal District Court has personal jurisdiction over Defendants, pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Nevada's long-arm statute, NRS 14.065, because Defendants have purposefully availed themselves of the privilege of conducting business activities within Nevada. Further, Defendants have established minimum contacts with Nevada through their ownership, operation, and/or control of the hotel property where Plaintiff was trafficked, as well as their continuous and systematic business activities in Nevada as outlined above.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434-1488

30.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff was trafficked at Excalibur Hotel and Casino, located within this District.

31.    Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3), as this Federal District Court has personal jurisdiction over Defendants.

## SEX TRAFFICKING UNDER FEDERAL LAW

32.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

33.    The requirement for liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") § 1595, based on a beneficiary theory, can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value"; (2) "from participating in a venture"; which (3) the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

34.    Sex trafficking' is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

35.    "Commercial Sex Act" is defined as any sex act for which anything of value is given to or received by a person. 22 U.S.C. § 7102(4).

36.    "Severe Forms of Trafficking in Persons" is defined as any instance of sex trafficking where: (a) a commercial sex act is induced by force, fraud, or coercion; or (b) the person induced to perform such an act is under eighteen (18) years of age. 22 U.S.C. § 7102(11).

37.    Pursuant to 18 U.S.C. § 1591(a), all who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion, or "cause a person to engage in a commercial sex act" are guilty of sex trafficking. This includes, at a minimum, both the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

38.    18 U.S.C. § 1595 provides for a beneficiary liability claim against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

value from participation in a venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. *See* 18 U.S.C. § 1595(a).

## GENERAL ALLEGATIONS

39.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

40.    The Sex Trafficking industry generates approximately $236 Billion annually[1], making it the second-largest criminal trade after the sale of illegal drugs.[2]

41.    Traffickers use hotel and motel rooms as hubs for their operations,[3] where victims are harbored, raped, assaulted, and forced to service buyers. The hospitality industry has made millions by participating in ventures that it knew or should have known engaged in violations of the TVPRA, under 18 U.S.C. §1591(a).

42.    Due to the prevalent connection between hotels and sex trafficking, government agencies and nonprofits including the United States Department of Homeland Security, the Polaris Project, the United States Department of Transportation, various attorney generals, and the End Child Prostitution and Trafficking (hereinafter "ECPAT"), among others, have extensively educated the hotel industry, including MGM Resorts International, on identifying and responding to sex trafficking incidents, and have established recommended policies and

---

[1] Rosalyn Roden, *Traffickers taking $236 billion in illegal profits at victims' expense*, Hope for Justice (citing International Labor Organization's 2024 report), (last visited April 15, 2025), https://hopeforjustice.org/news/traffickers-taking-236-billion-in-illegal-profits-at-victims-expense/

[2] *Transnational organized crime: the globalized illegal economy*, United Nations Office on Drugs, (last visited April 15, 2025), https://www.unodc.org/toc/en/crimes/organized-crime.html

[3] Bradley Myles, *Combating Human Trafficking in the Hotel Industry*, HUFFINGTON POST (last visited April 15, 2025), https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_7840754

procedures for recognizing signs of sex trafficking.[4][5]

43.    Indicators of sex trafficking in a hotel environment follow a well-known pattern and are easily detectable by appropriately trained staff. Various organizations have developed human trafficking "tool kits," which help hotel staff in every position identify and respond to signs of sex trafficking.[6] From check-in to check-out, there are indicators that traffickers and their victims exhibit during their stay at the hotel.

44.    Despite this knowledge, the hotel industry continues to prioritize profits over victims' safety. While hospitality corporations swiftly adapted their business practices to respond to the COVID-19 pandemic, they have remained inactive in the face of the human trafficking crisis. This failure to take meaningful action has led to the repeated sexual abuse and rape of victims on their properties.

45.    Upon information and belief, Defendants, and each of them, systematically failed to create, adopt, implement, and enforce anti-trafficking policies. This failure persists despite the availability of resources and training programs specifically designed for the hospitality industry to combat human trafficking.

---

[4] Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025) https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, (last visited April 15, 2025), https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, (last visited April 15, 2025), https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General*, Human Trafficking Red Flags*, (last visited April 15, 2025) https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .
[5] United States Department of Homeland Security Blue Campaign – *One Voice. One Mission. End Human Trafficking*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing and Exploited Children, *Trafficking Risk Factors*,  https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 15, 2025); Love 146, *Red Flags for Hotel & Motel Employees*, (last visited April 15, 2025), https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human *Trafficking Red Flags*, (last visited April 15, 2025) https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 15, 2025); U.S. Department of Transportation*, Indicators of Human Trafficking,* (last visited April 15, 2025), https://www.transportation.gov/stop-human-trafficking/indicators; Ohio Attorney *General, Human Trafficking Initiative*, (last visited April 15, 2025),  https://www.ohioattorneygeneral.gov/Individuals-and-Families/Victims/Human-Trafficking.
[6] E.g., Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

46.     Upon information and belief, Defendants, and each of them, neglected to provide staff with necessary training to identify and respond to trafficking, and failed to mandate training, allowing trafficking to persist unchecked.

47.     Defendants, and each of them, have actively profited from renting rooms where victims are forced into commercial sex against their will.

48.     Plaintiff D.G. is a survivor of sex trafficking, seeking justice through the judicial system, which Congress has empowered to provide remedies under the TVPRA. Under 18 U.S.C. § 1595, Defendants, and each of them, knowingly benefited from participation in a venture that it knew or should have known to be in engaging in violations of 18 U.S.C. § 1591(a).

49.     Plaintiff has suffered severe injuries as a result of their prolonged exploitation, including ongoing mental, emotional, and psychological trauma. Under Section 1595 of the TVPRA liable for a victim's damages. Plaintiff is entitled to all compensatory and non-compensatory damages incurred during their trafficking period.

50.     The hospitality industry cannot continue to feign ignorance while profiting from the exploitation of trafficking victims. Defendants, and each of them, must be held accountable for their knowing participation in ventures that violate the TVPRA, prioritizing financial gain over the safety and dignity of the individuals who have suffered under their watch.

## DEFENDANT'S ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF SEX TRAFFICKING AT EXCALIBUR HOTEL AND CASINO

51.     Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

52.     Upon information and belief, Defendants, and each of them, are aware that the hospitality industry serves as a primary facilitator of human trafficking, both domestically and

internationally.[7] The United Nations,[8] international non-profit organizations,[9] and the U.S. Department of Homeland Security,[10] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

53.    Since 2004, initiatives like ECPAT-USA launched the Tourism Child-Protection Code of Conduct (hereinafter the "Code") in the United States outlining specific hotel practices to prevent sex trafficking, such as: (1) prohibiting hourly room rates; (2) disallowing cash payments for accommodations; (3) monitoring online platforms for sex advertisements mentioning the hotel's name or featuring images of its rooms; (4) implementing regular changes to internet and Wi-Fi passwords in guest rooms and public areas; (5) tracking patterns of frequent visitors to specific rooms; (6) maintaining vigilance for rooms with excessive quantities of prophylactics, lubricants, and towels; and (7) mandating the registration of all visitors, including detailed information such as guest name, visitor name, arrival and departure times, and room number.

54.    On May 23, 2019, Defendant MGM International Resorts became a member of ECAPAT-USA's Code of Conduct for the Protection of Children from Sexual Exploitation in Travel and Tourism. In a press release MGM Resorts International stated, "MGM Resorts has already implemented several measures against human trafficking, including establishing relevant policies, procedures and practices, as well as educating and training employees. Joining ECPAT

---

[7] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION, (last visited April 15, 2025) https://ecommons.cornell.edu/items/62deb32c-ce31-4780-bb95-7827509a8890.

[8] UNITED NATIONS OFFICE ON DRUGS AND CRIME, *Global Report on Trafficking in Persons*, (last visited April 15, 2025), https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf; *See also,* UNITED NATIONS OFFICE ON DRUGS AND CRIME, *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners*, (last visited April 15, 2025), https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html

[9] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[10] U.S. Department of Homeland Security, *Human Trafficking and the Hospitality Industry*, (last visited April 15, 2025), https://www.dhs.gov/archive/blue-campaign/human-trafficking-and-hospitality-industry; U.S. Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

gives renewed focus to these commitments and provides the Company with an additional platform to reinforce its internal efforts with enhanced collaboration and engagement with external partners and resources." [11]

55.    Nationwide initiatives, such as the United Nations' Blue Heart Campaign (1997)[12] and the Department of Homeland Security's Blue Campaign (2010)[13], have acknowledged the prevalence of human trafficking within the hotel industry and the absence of adequate internal policies to address the issue. In response, these campaigns have aimed to educate both the public and private sectors—including hotel businesses—by providing free resources to help the hospitality industry combat human trafficking.

56.    Widely recognized indicators of sex trafficking, which Defendants were made of aware of, knew, or should have known, include but are not limited to:

   a.    Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

   b.    Individuals show signs of physical abuse, restraint, and/or confinement;

   c.    Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

   d.    Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

   e.    Individuals lack freedom of movement or are constantly monitored;

   f.    Individuals avoid eye contact and interaction with others;

   g.    Individuals have no control or possession of money or ID;

   h.    Individuals dress inappropriately for their age, for the weather, or have lower quality clothing compared to others in their party;

---

[11] MGM Resorts International, Press Release Details, *MGM Resorts International Strengthens Global Commitment to Anti-Human Trafficking Efforts*, (last visited August 25, 2025)
https://investors.mgmresorts.com/investors/news-releases/press-release-details/2019/MGM-Resorts-International-Strengthens-Global-Commitment-to-Anti-Human-Trafficking-Efforts/default.aspx
[12] United Nations, *The Blue Heart Campaign*, (last visited April 15, 2025),
https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20hein ous%20crime
[13] Department of Homeland Security, *DHS Blue Campaign Five Year Milestone*, (last visited April 15, 2025), *https://www.dhs.gov/archive/news/2015/07/22/dhs-blue-campaign-five-year-milestone*

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

i. Individuals have few or no personal items – such as no luggage or other bags;

j. Individuals appear to be with significantly older "boyfriend" or in the company of older males;

k. A group of girls appear to be traveling with an older female or male;

l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m. Drug abuse or frequent use of "party drugs" including (but not limited to) GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Crack Cocaine, Cocaine, and Marijuana;

n. Possession of bulk sexual paraphernalia such as attire, condoms, birth control, or lubricant;

o. Possession or use of multiple cell phones; and

p. Possession or usage of large amounts of cash or pre-paid cards.

57.    Upon information and belief, Defendants, and each of them, have access to their hotel location's do-not-rent (hereinafter "DNR") list that often list reasons for the refusal to rent, including suspicion of human trafficking.

58.    Guest reviews on sites like TripAdvisor, Yelp, Google, and Better Business Bureau frequently cite issues such as prostitution, physical violence, and criminal activity at the Excalibur.

59.    Defendants, and each of them, monitored online reviews of the Excalibur, which, upon information and belief, provide substantial evidence of human trafficking, violence, and other illicit activities occurring on the premises, such as:

a. A 2023 review warned other potential guests to avoid this place as there is prostitution, bad customer service, and drugs.

b. A 2023 review stated that it was very obvious the "security team:" is in with the group of individuals that are selling cocaine and other drugs throughout the hotel and casino floor.

c. A 2023 review stated that a customer complained that when they checked into their

*CHRISTIAN MORRIS TRIAL ATTORNEYS*
*2250 Corporate Circle, Suite 390*
*Henderson, Nevada 89074*
*P: 702-434.8282 | F: 702-434.1488*

14

room they found marijuana in the closet.

d.  A 2023 review stated that a guest had their laptop stolen from their room. After involving security and the LVPD, the laptop was not located in the room and Excalibur claimed they could not find it. Four days later, the laptop was found in the safe in the room, which when previously searched by security and police, was empty.

e.  A 2022 Yelp review claimed that hookers openly picked up clients throughout the casino and when the guest alerted the staff, they claimed they were aware of the situation, yet nothing was done.

f.  Numerous guests describe a perceived lack of security during disturbances, such as drunk individuals attempting to enter their rooms at random times during the night or early morning.

g.  Several reviews complain about the copious amount of drug dealers that frequent the hotel entrance as well as working girls standing outside the hotel or working inside the casino.

h.  Some guests report excessive noise from neighboring rooms, outdoor parties, or parking lots, especially on weekends, and dissatisfaction with hotel responses to these complaints.

i.  Some guests report of public intoxication or disturbances—sometimes involving non-guests—particularly in outdoor or pool areas.

60.  Upon information and belief, these reviews, provide evidence of human trafficking at the Excalibur. These examples demonstrate that the Defendants knew or should have known of the problem and failed to take proactive measures to not profit from it.

61.  Based on the accumulation of public information, news reports, and online reviews, by the time Plaintiff was trafficked the Excalibur, Defendants knew or should have known, that:

a.  Sex trafficking was widespread and ongoing at the Excalibur;

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

b.  Defendants failed to take reasonable steps to identify or address sex trafficking, which was actively occurring at the Excalibur;

c.  Defendants' efforts, if any, to stop trafficking were ineffective at the Excalibur;

d.  Defendants were earning revenue by providing a venue where widespread and ongoing sex trafficking was occurring at the Excalibur.

e.  Defendants were earning revenue by turning a blind eye to the human trafficking occurring at the Excalibur.

62.  Upon information and belief, Defendants, and each of them, understood the greater risks of prostitution and sex trafficking occurring in the Las Vegas area, due to its notoriety as a hub for prostitution.

63.  Upon information and belief, despite clear evidence that sex trafficking was occurring at Excalibur, Defendants, and each of them, continued to earn revenue by continuing conduct that they knew or should have known would facilitate trafficking.

64.  Upon information and belief, Defendants, and each of them, exercise comprehensive control over security and the reporting of criminal activities, including human trafficking, across their property at the Excalibur. Despite having the responsibility and the means to monitor and address these reports through various security measures, such as camera surveillance and customer data analysis, Defendants failed to act on clear indicators of trafficking at the Excalibur. This neglect facilitated the sex trafficking of individuals, including Plaintiff.

## THE SEX TRAFFICKING OF PLAINTIFF D.G.

65.  Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

66.  By means of a combination of force, coercion, physical abuse, threats, manipulation, compelled use of and dependency on illegal substances, control over identification documents and possessions, and deprivation of basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing, Plaintiff D.G.'s Trafficker forced her to have commercial sex for money.

67.  Plaintiff D.G.'s trafficking began when she first met her Trafficker in Oregon.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434-8282 | F: 702-434-1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

What seemed like a friendly relationship quickly evolved into one of abuse and control. Plaintiff D.G.'s Trafficker coerced her into trafficking in 2019 at the age of twenty-four (24).

68.     Plaintiff D.G.'s trafficking started at the Excalibur in the spring of 2020.

69.     Plaintiff D.G. was coerced to perform various commercial sex acts at the Excalibur.

70.     Plaintiff D.G.'s trafficker rented rooms at the Excalibur because the location offered convenience, anonymity, and proximity to potential purchasers. At times, the traffickers forced or coerced Plaintiff D.G. to rent the room herself, while they waited nearby, often outside or just out of view, maintaining control over her and monitoring her actions.

71.     Plaintiff D.G.'s trafficker found purchasers by advertising her on TNA Board, KiK, Skip the Games, CityxGuide, 5 Escorts, text now, and other internet sites listing adult service providers, while connected to Defendants' internet.

72.     During her stay at the Excalibur, Plaintiff D.G. was held against her will, forced to have sex with multiple purchaser's every day and was raped on numerous occasions.

73.     During her stay at the Excalibur, Plaintiff D.G. was repeatedly subjected to physical abuse.

74.     During her stay at the Excalibur, Plaintiff D.G. was subjected to ongoing psychological abuse. Her trafficker withheld food and water, forced her to ingest illegal substances, physically assaulted her, and threatened her with death or severe harm to her and her family if she disobeyed.

75.     During her stay at the Excalibur, Plaintiff D.G. had multiple and repeated interactions with employees and agents of Defendants while exhibiting numerous well-recognized indicators of human trafficking, including visible physical injuries, apparent fear and submission to a controlling third party, lack of personal possessions or identification, and unusual restrictions on her movement and communications. These red flags, individually and collectively, were so obvious, severe, and consistent with known trafficking patterns that any properly trained hotel staff member would have recognized them. Despite these glaring warning signs, which placed Defendants on actual and/or constructive notice that Plaintiff was a victim of sex

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

trafficking occurring on their premises, Defendants' employees and management took no action to investigate, intervene, or contact law enforcement, thereby allowing the trafficking to continue.

76.    During her stay at the Excalibur, Plaintiff D.G. could be heard crying out, screaming in pain, and audibly struggling while being assaulted and abused inside her room. Despite her screams, Defendants' employees and management failed and refused to intervene, contact law enforcement, or render assistance, thereby allowing the abuse and sex trafficking of Plaintiff to continue unabated within Defendants' premises.

77.    During her stay at the Excalibur, Plaintiff D.G. was approached by a man she believed to be a hotel security employee because he wore an earpiece and questioned her about what she was doing. Instead of acting in his role as security by offering assistance, reporting her circumstances to hotel management, or notifying law enforcement, Defendant's employee acted inappropriately by attempting to solicit her and telling her that she "could do much better than this." In doing so, Defendant's own employee attempted to engage in sex trafficking at the Excalibur rather than protect Plaintiff D.G. from it.

78.    During her stay at the Excalibur, Plaintiff was forced to call maintenance because her trafficker had locked the in-room safe. When the maintenance employee arrived, he asked her questions such as whether she was traveling alone, to which she responded ambiguously. Upon information and belief, the employee knew or should have known that Plaintiff was being trafficked based on the obvious circumstances in the room, including her appearance, the presence of numerous condoms and wrappers, and the fact that both beds showed signs of use. Instead of offering assistance, reporting his observations to hotel management, or contacting law enforcement, the employee did nothing, thereby allowing the trafficking to continue.

79.    During her stay at the Excalibur, Plaintiff D.G.'s Trafficker implemented a methodical and well-established operational protocol, consistent with practices widely recognized within the illicit sex trafficking industry, such as:

    a.    An unusually high volume of individuals entered and exited Plaintiff D.G.'s room at frequent intervals;

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

    b.   Plaintiff D.G.'s Trafficker consistently refused housekeeping services, denying hotel staff entry to the room;

    c.   Plaintiff D.G.'s room exhibited an excessive quantity of used illicit drugs, prophylactics, soiled linens, used condoms, and discarded clothing, indicative of commercial sexual activity.

    d.   Plaintiff D.G. was consistently accompanied by her Trafficker when entering the premises, displaying evident signs of distress, including evasive behavior, reticence, and visible fear.

    e.   Audible disturbances, including loud vocalizations and screams, emanated from Plaintiff D.G.'s room, suggestive of ongoing abuse and sexual assault.

    f.   Plaintiff D.G.'s Trafficker consistently utilized cash payments for room reservations at the Excalibur, a common practice in sex trafficking operations;

    g.   Plaintiff D.G.'s Trafficker routinely requested accommodations in secluded areas of the hotel, away from other guests;

    h.   Plaintiff D.G.'s Trafficker made frequent and excessive requests for fresh linens and towels;

    i.   An unusually large quantity of used prophylactics was consistently observed in Plaintiff D.G.'s Excalibur room;

    j.   Plaintiff D.G.'s Trafficker repeatedly instructed hotel staff not to disturb the room occupants;

    k.   Plaintiff D.G. was often observed wearing attire inappropriate for the prevailing weather conditions;

    l.   Instances of loitering and solicitation by Plaintiff D.G. were observed at Excalibur;

80.    Consequently, Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff D.G. was being trafficked at the Excalibur. The indicators of sex trafficking she displayed were pervasive, repeated, and blatantly visible indicators that are widely recognized within the hospitality industry, addressed in established anti-trafficking protocols, and the subject of mandatory or recommended training for hotel staff. These well-known

red flags, combined with Defendants' prior awareness of trafficking risks on their property, placed Defendants on actual and/or constructive notice that Plaintiff was the victim of ongoing sex trafficking. Despite such knowledge, Defendants failed to take any reasonable steps to prevent, stop, or report the criminal activity occurring in plain sight on their premises.

81.    Despite multiple blatant indicators of sex trafficking, well-known in the hospitality industry and addressed in standard anti-trafficking protocols, employees and/or agents of Defendants knowingly placed and relocated Plaintiff D.G. into guest rooms in isolated areas of the property, away from the view or hearing of other guests. This placement had no legitimate business purpose and served to conceal her condition, shield the trafficking from detection, and make it easier for her Trafficker to control, abuse, and exploit her. By affirmatively isolating Plaintiff under these circumstances, Defendants' staff facilitated, prolonged, and enabled the criminal activity on their premises.

82.    These trafficking indicators were obvious and readily apparent to any reasonably attentive employee at the Excalibur. Their prevalence and visibility, matching widely recognized industry red flags, should have alerted properly trained staff to the ongoing exploitation occurring on the premises.

83.    Defendants' failure to act on these clear, well-known indicators of trafficking was a blatant breach of their duty of reasonable care and a willful disregard of industry-standard anti-trafficking protocols, allowing them to continue profiting from the trafficking venture.

**DEFENDANTS KNOWINGLY ENABLED AND PROFITED FROM THE**
**SEX TRAFFICKING OF PLAINTIFF**

84.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

85.    Defendants, and each of them, played a direct and significant role in facilitating the trafficking of Plaintiff D.G. at the Excalibur.

86.    Defendants, and each of them, knowingly benefited from the sex trafficking of Plaintiff D.G.

87.    Defendants, and each of them, knowingly rented guest rooms and

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

provided internet service to Plaintiff D.G.'s Trafficker despite actual and/or constructive knowledge that sex trafficking was prevalent at the Excalibur, including knowledge of specific red-flag indicators present during Plaintiff's trafficking.

88.     Defendants, and each of them, derived a steady and reliable stream of income from the room rentals, fees, and related services purchased by Plaintiff's Trafficker and his sex-buying customers, profiting directly from every transaction in which Plaintiff was harbored, abused, and exploited for commercial sex on the premises.

89.     Even after becoming aware that these profits were the direct proceeds of sex trafficking, Defendants, and each of them, took no steps to refuse, return, or disgorge such illicit gains, instead retaining and continuing to benefit from them.

90.     Defendants, and each of them, further profited from data collected when the Trafficker and sex purchasers used the Excalibur's internet to post advertisements and solicitations for Plaintiff's commercial sexual exploitation.

91.     Defendants' employees, agents, and staff, including front desk personnel, knew or should have known of the obvious and persistent signs of Plaintiff's trafficking at the Excalibur. In light of the property's prior police reports, news coverage, guest complaints, and negative reviews referencing criminal activity, Defendants had actual and/or constructive notice that sex trafficking was occurring at the Excalibur and, despite this knowledge, allowed it to continue unabated.

92.     Defendants knew or should have known of Plaintiff's trafficking occurring at the Excalibur, considering the city's reputation for sex trafficking. [14] [15] [16]

93.     Defendants knew, or in the exercise of reasonable care should have known, that

---

[14] Jacquelyn Gray, *Why Sex Trafficking is Such a Big Problem in Las Vegas*, A&E, (last visited April 15, 2025), https://www.aetv.com/real-crime/sex-trafficking-in-las-vegas/
[15] Alyssa Bethencourt, *Las Vegas is a hotspot for human trafficking, here's how to spot signs*, KTNV-13, ABC, (last visited April 15, 2025), https://www.ktnv.com/news/las-vegas-is-a-hotspot-for-human-trafficking-heres-how-to-spot-signs/
[16] Stephanie Overton, *Las Vegas police arrest more than 70 in sex trafficking operation during Grand Prix week*, Channel 8 News, CBS, (last visited April 15, 2025), https://8newsnow.com/news/local-news/las-vegas-police-arrest-more-than-70-in-sex-trafficking-operation-during-grand-prix-week/

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

Plaintiff D.G. was being trafficked at the Excalibur, as she exhibited numerous, obvious, and well-recognized indicators of sex trafficking that are widely known within the hospitality industry.

94.    Despite repeated opportunities to intervene and stop the Trafficker who was exploiting Plaintiff D.G., Defendants took no reasonable steps to do so and instead continued to profit from the trafficking occurring on their property. Defendants' systematic and deliberate willful blindness enabled, facilitated, and encouraged the trafficking, while ensuring they continued to receive steady revenue from room rentals, fees, and other services purchased by the Trafficker and sex buyers.

95.    Defendants, and each of them, further capitalized on a business model that cultivated a reputation for privacy, discretion, and tolerance of commercial sex activity— practices they knew directly contributed to Plaintiff's ongoing exploitation. At no point did Defendants meaningfully alert law enforcement, intervene in known incidents of trafficking involving Plaintiff, or implement reasonable security measures to detect and prevent such crimes, choosing instead to preserve and profit from the environment that allowed her trafficking to flourish.

96.    Defendants, and each of them, failed to take any meaningful steps to alert law enforcement, intervene in situations involving Plaintiff's trafficking of which they knew or should have known, and failed to implement reasonable security measures to identify and to prevent their profiting from the human trafficking at the Excalibur, including the sex trafficking of Plaintiff.

97.    Defendants, and each of them, maintained these deficiencies intentionally to maximize profits, including by:

      a.    Deliberately reducing or eliminating the cost of training employees, managers, and staff on how to identify human trafficking and sexual exploitation—and on the steps required when such activity is suspected—in order to avoid disrupting revenue-generating operations;

22

b. Knowingly renting rooms to, and failing to report to law enforcement, guests who were identified or should have been identified as sex traffickers or purchasers of sex, in order to maximize room occupancy rates and profits;

c. Cutting costs by refusing to employ qualified security personnel and failing to maintain adequate video surveillance systems necessary to monitor for and combat trafficking activity on the premises; and

d. Refusing to implement and enforce meaningful anti-trafficking policies and procedures, and failing to investigate or hold accountable employees or managers who were complicit in facilitating, ignoring, or concealing trafficking activities.

98.     Despite having access to extensive information regarding sex trafficking indicators and the conspicuous signs of Plaintiff's exploitation at the Excalibur, Defendants failed to implement appropriate measures to intervene and prevent their profiting from the trafficking of Plaintiff. This inaction persisted despite widespread industry awareness of trafficking risks, publicly available guidelines for prevention, and the presence of numerous red flags that aligned with recognized indicators of human trafficking within the hospitality sector.

99.     Defendants, and each of them, consistently failed to take necessary actions to prevent their profiting from the exploitation occurring at the Excalibur. Specifically, Defendants failed to:

a. Mandate comprehensive training for employees and managers on identifying signs of human trafficking and sexual exploitation;

b. Analyze data on criminal activity and customer reviews indicating trafficking at their properties, and take corrective actions to address these issues;

c. Collect and utilize vast amounts of data from their locations for marketing purposes but fail to apply the same data to combat trafficking in their hotel;

d. Refuse room rentals or report suspicious guests to law enforcement, prioritizing maximum occupancy rates over the safety of trafficking victims;

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

    e.   Monitor and track guest wireless network activity for signs of illicit commercial sex or human trafficking-related digital activity;

    f.   Implement adequate security measures, such as qualified security personnel and appropriate cybersecurity, to combat trafficking and sexual exploitation;

    g.   Use their influence as a parent company to hold franchisees accountable for the trafficking occurring on their properties.

100.    Defendants' deliberate failure to intervene and its ongoing facilitation of sex trafficking at the Excalibur directly enabled the continued victimization of Plaintiff D.G. and their continued profits from that victimization.

101.    Defendants knew or should have known of the persistent sex trafficking occurring within their establishment at the Excalibur. Instead of implementing prompt and effective measures to combat this crisis, they deliberately turn a blind eye to the blatant signs of exploitation. This willful ignorance allows them to continue profiting from room rentals clearly used for illicit purposes. By failing to address this issue, Defendants prioritized their financial gains over the safety and well-being of trafficking victims, effectively enabling the continuation of these criminal activities on their premises.

102.    As a result, Plaintiff D.G. has suffered severe emotional distress, humiliation, mental anguish, and physical pain and suffering, as well as a substantial loss of enjoyment of life. Furthermore, Plaintiff D.G. has incurred and will continue to incur medical expenses, attorney's fees, lost wages, diminished earning capacity, and punitive damages, all in an amount to be determined at trial.

## FIRST CLAIM FOR RELIEF

### (Violations of 18 U.S.C 1595 ("TVPRA"))

### Against all Defendants

103.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

104.    Plaintiff D.G. is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and are entitled to bring a civil action under 18 U.S.C. § 1595.

105. Defendants, and each of them, are liable under 18 U.S.C. § 1595(a) because, as detailed above, they knowingly, intentionally, or with reckless disregard, participated in the harboring, maintenance, and other acts in furtherance of sex trafficking, including the trafficking of Plaintiff D.G. Defendants knowingly received, and continued to receive, financial and other benefits derived from their participation in a venture that they knew, or were willfully blind to in not knowing, involved the trafficking, harboring, and exploitation of sex trafficking victims—including Plaintiff—in exchange for those financial benefits.

106. Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants had a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA. At all relevant times, Defendants failed to act as reasonably diligent corporations and breached this duty through their participation in the harboring, maintaining, soliciting, and advertising Plaintiff D.G. and her trafficker for the purpose of commercial sex induced by force, fraud, or coercion.

107. Defendants knew or should have known of the persistent sex trafficking occurring within their establishments. Instead of implementing prompt and effective measures to combat this crisis, they deliberately turn a blind eye to the blatant signs of exploitation. This willful ignorance allows them to continue profiting from room rentals clearly used for illicit purposes. By failing to address this issue, the hotels prioritize their financial gains over the safety and well-being of trafficking victims, effectively enabling the continuation of these criminal activities on their premises.

108. Defendants, and each of them, benefited as a result of these acts, omissions, and/or commissions by renting rooms and providing internet/Wi-Fi to traffickers and customers, keeping operating costs low, maintaining the loyal customer base that fuels the supply and demand of sex trafficking, and limiting mandatory regulations. Moreover, on each occasion they received payment for rooms, Defendants directly benefited from the sex trafficking of Plaintiff D.G. when they knew or should have known violations of §1591(a) were occurring.

109. Defendants, and each of them, participated in a hotel business venture and/or a sex

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702.434.8282 | F: 702.434.1488

25

trafficking venture in which they knowingly benefited from the commercial sex trafficking of Plaintiff D.G., who was trafficked as a direct result of Defendant's acts, omissions, and/or commissions. In order to maintain the loyalty of the segment of their customer base involved in the sex trade, Defendants continued renting rooms to traffickers, failing to intervene despite obvious signs of trafficking. Defendants' failure to properly train and supervise their agents and employees, coupled with their disregard for the welfare of their guests, enabled the continued exploitation of Plaintiff. The Defendants and Plaintiff's trafficker engaged in a venture in which all were necessary parties to obtain the profits from the sex trafficking of Plaintiff D.G.

110.    Moreover, Defendants knowingly and directly benefited from the sex trafficking of Plaintiff D.G. on each occasion they received payment for rooms where Plaintiff D.G. was sexually exploited by guests of the hotel.

111.    As set forth above, Defendants acted with conscious and deliberate disregard for Plaintiff D.G.'s rights, safety, and dignity, fully aware of the devastating and foreseeable consequences of their conduct. Despite long-standing, documented knowledge that sex trafficking was widespread at the Excalibur—including an extreme amount of used condoms and other paraphernalia in the trash, repeated requests to change the sheets on one of the beds in the room, and D.G.'s random movements from room to room with several different men —Defendants made the calculated decision to continue profiting from the exploitation of vulnerable individuals. They willfully chose not to implement or enforce meaningful anti-trafficking policies, refused to train or supervise staff to identify and report trafficking, and ignored blatant indicators of abuse on their property. This deliberate and profit-driven inaction, taken with full awareness of the harm being inflicted, constitutes malicious and oppressive conduct undertaken to perpetuate Plaintiff's trafficking for financial gain. Such conduct justifies the imposition of substantial punitive damages.

112.    Defendants' actions and inactions further demonstrate implied malice toward Plaintiff's rights and safety. Defendants were, or unquestionably should have been, fully aware that sex trafficking was rampant at the Excalibur. Yet they took no reasonable measures to stop it—ignoring clear signs, refusing to intervene despite overwhelming evidence, and allowing the

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

continued exploitation of Plaintiff and others in plain sight. All the while, Defendants reaped financial benefits from room rentals, service fees, and ancillary sales directly tied to the trafficking venture. This despicable conduct, reflecting a complete lack of concern for human suffering occurring under their roof, warrants punitive damages both to punish Defendants' willful indifference and to deter similar misconduct in the hospitality industry.

113.    The conduct, omissions, and deliberate policy choices of Defendants, and each of them, were negligent, grossly negligent, intentional, willful, wanton, oppressive, and malicious, and were undertaken with conscious disregard for Plaintiff's rights and safety.

114.    The totality of Defendants' conduct demands punitive damages of a magnitude sufficient to punish their egregious behavior and deter similar misconduct across the hospitality industry. Such an award should reflect the prolonged nature of Defendants' inaction and willful blindness spanning years; the severe and ongoing harm inflicted on Plaintiff and other victims as a direct result of Defendants' failures; the substantial profits Defendants knowingly reaped from their participation in and facilitation of human trafficking; and the urgent need to send a clear, unmistakable message to the hospitality industry that deliberate complicity in trafficking will not be tolerated and will carry devastating financial consequences.

115.    The necessity for exemplary punitive damages is further amplified by the unique position of Las Vegas, Nevada in the hospitality industry. As the hospitality capital of the world, Las Vegas sets standards and practices that reverberate throughout the global hospitality sector. The high concentration of hotels and casinos in Las Vegas creates an environment where unchecked trafficking can proliferate rapidly, magnifying the impact of corporate negligence. Therefore, punitive damages must be of a magnitude that not only punishes Defendants but also serves as a watershed moment for the entire hospitality industry, compelling immediate and comprehensive reforms in Las Vegas that will set new global standards for combating sex trafficking in hotels.

116.    The imposition of significant punitive damages in this case is vital to deter other hospitality businesses in Las Vegas—many of which, like Defendants, derive immense profits from high guest volume and a reputation for privacy—from turning a blind eye to human

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

trafficking. Without meaningful judicial intervention, the systemic failures and willful blindness exhibited by Defendants risk becoming the accepted norm, allowing traffickers to exploit vulnerable individuals with impunity. Awarding substantial punitive damages will not only hold Defendants accountable but will also compel the entire Las Vegas hospitality industry to implement rigorous anti-trafficking policies, robust staff training, and strict compliance measures, thereby protecting future victims and preventing the continuation of these egregious practices.

117.    After escaping her trafficker, Plaintiff D.G. has spent significant time and effort trying to rebuild her life, which was violently torn away. The lasting trauma from her captivity and abuse continues to affect her, serving as a constant reminder of the Defendants' role in enabling her exploitation.

118.    As a direct and proximate result of the acts or omissions of Defendants, Plaintiff D.G. has suffered severe emotional distress, humiliation, mental anguish, psychological trauma, and physical pain and suffering, and a significant decrease in her ability to enjoy life, all in excess of Seventy-Five Thousand Dollars ($75,000.00).

119.    As a direct and proximate result of the acts or omissions of Defendants, Plaintiff D.G., has incurred medical expenses for the treatment of her injuries and may require ongoing future treatments necessitated by the harm they suffered. The exact amount of such past and future damages is unknown at this present time, but Plaintiff alleges that they have suffered and/or will suffer damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

120.    As a direct and proximate result of the acts or omissions of Defendants, Plaintiff D.G., has suffered loss of income and/or loss of earning capacity, all in excess of Seventy-Five Thousand Dollars ($75,000.00).

121.    The actions and inactions of Defendants, their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff D.G. to suffer these damages. Plaintiff D.G. is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

122.    As a direct and proximate result of the acts or omissions of Defendants, Plaintiff

1
2
3

D.G., had to retain the services of the law offices of CHRISTIAN MORRIS TRIAL ATTORNEYS to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred herein.

4

**WHEREFORE**, PLAINTIFF D.G., prays for judgment against Defendants as follows:

5
6
7

1.    For general and special damages in excess of $75,000.00 for medical expenses, pain and suffering, permanent injury, disfigurement, anguish and fear, and lost wages.

8

2.    For punitive damages;

9

3.    For any and all pre- and post-judgment interest as permitted by law;

10

4.    For reasonable attorney's fees and costs;

11

5.    For such other and further relief as the Court deems proper.

12

**DEMAND FOR JURY TRIAL**

13
14

Pursuant to F.R.C.P. 38, Plaintiff hereby demand trials by jury on all issues raised in this action.

15

DATED this 30th day of October 2025

16

CHRISTIAN MORRIS TRIAL ATTORNEYS

17

*/s/ Sarah E. DiSalvo*

18
19
20
21
22
23

CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DiSALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
*Attorneys for Plaintiff*